# 2

156 F.3d 1230 (Table)  
156 F.3d 1230 (Table), 1998 WL 393766 (6th Cir.(Mich.))  
**Unpublished Disposition**  
(Cite as: 156 F.3d 1230, 1998 WL 393766 (6th Cir.(Mich.)))  
▷

Page 1

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

LODAL, INC., Plaintiff-Appellant,  
v.  
HOME INSURANCE COMPANY OF ILLINOIS, Defendant-Appellee.

No. 95-2187.

June 12, 1998.

On Appeal from the United States District Court for the Western District of Michigan.

Before KENNEDY, CONTIE, and MOORE, Circuit Judges.

OPINION

MOORE, Circuit Judge.

**1 The plaintiff-appellant, LoDal, Inc. ("LoDal"), seeks to recover from its insurer, defendant-appellee Home Insurance Company of Illinois ("Home Insurance"), costs it incurred in defending itself against a civil action initiated by the United States. The district court granted Home Insurance's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, the district court rejected LoDal's argument that the arbitration clause contained in the liability policy LoDal purchased from Home Insurance was unenforceable. Because we agree with the district court that the policy's arbitration clause is enforceable, we affirm the district court's order dismissing this matter.

I

LoDal purchased from Home Insurance a one-year commercial general liability policy for the period January 14, 1993 through January 14, 1994 (the "Policy"). J.A. at 27 (Pl.'s Ex. A). During that time period, Arnold and Martha Diaz filed suit against LoDal in California for personal injuries sustained by them due to an occurrence covered under the Policy. Home Insurance hired counsel to defend LoDal in the Diaz suit.

On November 16, 1994, LoDal commenced this action against Home Insurance in state court, seeking a declaratory judgment that under the terms of the Policy, Home Insurance is responsible for all defense costs, J.A. at 17 (Compl.¶ 9), and that the Policy's arbitration clause is unenforceable. J.A. at 19-22 (Compl.¶¶ 16-23). Home Insurance argues that the arbitration clause is valid, and that under the Policy's ultimate net loss provision and self-insured retention obligation, LoDal is responsible for the first $200,000 of ultimate net losses, which includes defense costs, with Home Insurance responsible for ultimate net losses over and above that amount. Def-Appellee's Br. at 14. As of December 16,-1994, LoDal had incurred $24,646 in attorney fees and costs in defending the Diaz action, although costs continued to accrue. J.A. at 60 (Aff. in Supp. of Pl.'s Mot. to Remand ¶ 3). The Diaz case was eventually settled for $110,000 J.A. at 171 (Pl.'s Objection to Magis. J.'s R & R).

Home Insurance removed the case to federal court on the basis of diversity jurisdiction. Thereafter, Home Insurance filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [FN1] The district court granted the motion and dismissed the case on the grounds that the arbitration clause was enforceable and that therefore the dispute between LoDal and Home Insurance must be submitted to arbitration. [FN2] J.A. at 203-07 (Dist. Ct. Op. and Order Approving Magis. J.'s R & R). No opinion was expressed as to the merits of LoDal's claim, i.e., whether under the policy Home Insurance was liable for all defense costs.

> FN1. Although Home Insurance named its motion a motion for summary judgment, the magistrate judge concluded that Home Insurance had misnamed its motion, and that the motion was actually a Rule 12(b)(6) motion because it raised purely legal issues and did not rely on matters outside the pleadings. J.A. at 165 (Magis. J. R & R). We note that pursuant to Fed. R. Civ. P. 10(c), the general commercial liability policy issued to LoDal by Home Insurance became part of the pleadings because it was attached to LoDal's complaint as an exhibit.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

156 F.3d 1230 (Table)  
(Cite as: 156 F.3d 1230, 1998 WL 393766, **1 (6th Cir.(Mich.)))

Page 2

FN2. In its motion to dismiss, Home Insurance also asked the district court to grant it summary judgment with respect to LoDal's claim that Home Insurance is responsible for all defense costs on the ground that the Policy clearly and unambiguously required as a condition precedent to Home Insurance's obligation to pay defense costs and/or make indemnity payments that LoDal make actual payment of ultimate net losses in the amount of the self-insured retention of $200,000. J.A. at 91 (Def.'s Mot. for Summ. J. ¶ 9). The district court did not rule on the merits of this claim. J.A. at 207 (Dist. Ct. Op. and Order Approving Magis. J.'s R & R).

II

Before reviewing the district court's order dismissing this matter pursuant to Fed. R. Civ. P. 12(b)(6), we first must address the plaintiff's challenge to the district court's jurisdiction. We review de novo a district court's decision on subject matter jurisdiction. *See Hilliard v. United State Postal Serv.,* 814 F.2d 325, 326 (6th Cir.1987), *abrogated on other grounds by Bartlik v. U.S. Dep't of Labor,* 62 F.3d 163 (6th Cir.1995). However, we must respect the district court's factual findings that are the basis of a jurisdictional determination unless clearly erroneous. *See Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 326 (6th Cir.1990). At the time at which the plaintiff-appellant filed suit, a federal court had original jurisdiction over a case pursuant to 28 U.S.C. § 1332 (1994) where the parties were citizens of different states, and the amount in controversy exceeded $50,000. [FN3] The parties in this matter clearly met the diversity of citizenship requirement. LoDal is a citizen of Michigan, its place of incorporation and principal place of business, and Home Insurance is a citizen of Illinois, its place of incorporation and principal place of business. J.A. at 15-16 (Compl.¶¶ 1, 2); J.A. at 7-8 (Notice of Removal ¶¶ 3, 4). The parties, however, contest whether the amount in controversy exceeds $50,000.

FN3. At the time Home Insurance sought removal to federal court, 28 U.S.C. § 1332(a) stated in relevant part as follows: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different States...." 28 U.S.C.A. § 1332(a) (1994). In 1996, Congress increased the amount in controversy requirement to in excess of $75,000. 28 U.S.C. § 1332(a).

**2 When the defendant removes an action from state court to federal court, the defendant must show that the **amount** in **controversy** exceeds the applicable statutory **threshold** of $50,000. *See Gafford v. General Elec. Co.,* 997 F.2d 150, 155 (6th Cir.1993). The amount in controversy must be satisfied at the time of removal, and subsequent events will not oust the federal courts of jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289-92, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Dismissal for lack of jurisdiction is justified only where it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* at 289; *see also Sellers v. O'Connell,* 701 F.2d 575, 578 (6th Cir.1983). Where a party seeks a declaratory judgment, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Beacon Constr. Co. v. Matco Elec. Co.,* 521 F.2d 392, 399 (2d Cir.1975); *see also Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Goldsmith v. Sutherland,* 426 F.2d 1395, 1398 (6th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970).

In its initial complaint filed in state court, LoDal stated that the amount of the defense costs currently in controversy "is greatly in excess of Ten Thousand Dollars." J.A. at 18 (Compl.¶ 13). At the time, LoDal had incurred almost $25,000 in costs in defending the Diaz claim, and continued to incur additional costs. LoDal argues that because $25,000 is well below the jurisdictional threshold of $50,000, the district court improperly concluded that it had jurisdiction over this diversity action. In concluding that it had subject matter jurisdiction, the district court relied upon the determination of the magistrate judge, who concluded that because the parties contest whether LoDal bears responsibility for the defense costs incurred in the Diaz action up until satisfaction of the Policy's $200,000 self-insured retention provision, the amount in controversy involves not the amount in defense costs previously incurred by LoDal, but the risk that LoDal must pay all defense costs until satisfaction of the $200,000 cap. J.A. at 83 (Magis. J. Op. and Order). The magistrate judge concluded that "[w]hether plaintiff will in fact ultimately incur at least $50,000 of defense costs in the course of satisfying the $200,000 deductible is not something which can be predicted with any degree of certainty, ... [but] that possibility

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

certainly exists." *Id.* We agree with this conclusion that the amount in controversy exceeded $50,000 at the time of removal. At the time Home Insurance sought removal to federal court, the Diaz litigation had not settled. Because the defense costs in the Diaz action continued to rise, it could not be predicted to a legal certainty that the legal fees ultimately incurred by LoDal in defending the Diaz action would not exceed $50,000.

**3 In the alternative, the magistrate judge concluded that the value of the right plaintiff-appellant seeks to protect is $200,000. The magistrate judge reasoned that resolution of the parties' dispute conclusively resolves not only LoDal's claim against Home Insurance for the defense costs incurred in defending the Diaz claim, but also all future claims for defense costs brought under the Policy. J.A. at 83 (2/1/95 Magis. J. Op. and Order at 3). According to the magistrate judge, the value of the risk to LoDal of having to satisfy the entire $200,000 self-insured retention obligation through the payment of defense costs is $200,000. *See id.*

We agree with the magistrate judge that because resolution of the dispute between LoDal and Home Insurance definitively establishes both present and future rights under the Policy, the value of the right LoDal seeks to protect equals the potential benefits of the contract to LoDal, i.e., "the entire value of the contract ... rather than installments under the contract or possible damages." *Beacon Constr.*, 521 F.2d at 399. We have previously held that "where the validity of an insurance policy containing disability benefit provisions is involved in a diversity action in a federal district court, future potential benefits may be considered in computing the requisite jurisdictional amount." *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir.1996) (quotation omitted). Although the present case does not involve a challenge to the validity of an *entire* liability policy, the dispute between LoDal and Home Insurance is a purely legal one involving the interpretation of an insurance contract, and resolution of the dispute will determine the parties' rights with respect to any future claim for defense costs brought under the Policy. We therefore hold that the magistrate judge correctly determined that the value of the right LoDal seeks to protect includes the potential value of future claims under the policy, and that the amount in controversy is therefore $200,000. *See Sears, Roebuck and Co. v. American Mut. Liab. Ins. Co.*, 372 F.2d 435 (7th Cir.1967) (where insured sought declaration that insurer was obligated to defend it in underlying action, court held that the amount of controversy is not insured's liability in underlying action but value of extent of policy coverage). Accordingly, the district court properly exercised jurisdiction over this matter.

III

We review de novo a district court's dismissal of a case pursuant to Fed. R. Civ. P. 12(b)(6). *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). Accepting all allegations contained in the complaint as true, "the court should deny the motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Id.*

When sitting in diversity, the federal district court must apply the choice of law rules of the state where it sits, in this case the state of Michigan. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although Michigan courts traditionally had construed contractual provisions in accordance with the law of the place where the contract was entered into, it recently adopted the more policy-centered approach of the Restatement (Second) Conflict of Laws, which emphasizes the relevant contacts and policies of interested states. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 528 N.W.2d 698, 701-03 (Mich.1995). Because Michigan is the place of contracting and the state where LoDal, the insured, is incorporated and has its principal place of business, the relevant contacts favor application of Michigan law.

**4 We now turn to whether under Michigan law, LoDal is bound to the conditions set forth in the arbitration clause contained in Home Insurance's commercial general liability policy. The Policy contained the following arbitration clause:

> Any controversy arising out of or relating to this policy or breach thereof shall be settled by binding arbitration in accordance with the rules of the American Arbitration Association (herein AAA) then in effect. Insured and the Company, before entering into arbitration, shall each appoint an arbitrator. Each arbitrator must be a present or former executive of an insurance company.... [T]he two arbitrators will select a third arbitrator to be Chairman of the panel.... None of the arbitrators shall be current or former officers or current or former employees of the parties to this policy....
> 
> .... Said decision shall be final and binding upon both parties in any court of competent jurisdiction.

J.A. at 39 (Pl.'s Ex. A). LoDal argues that it should not be bound to the conditions of the arbitration clause because the insurance contract is one of adhesion and

the clause is unconscionable. Alternatively, LoDal contends that enforcement of the arbitration clause denies it procedural due process. LoDal also argues that Home Insurance has waived its right to demand arbitration by proceeding with this litigation.

In determining whether a contract is one of adhesion, Michigan courts consider "(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?" *Rehmann, Robson & Co. v. McMahan*, 187 Mich.App. 36, 466 N.W.2d 325, 329 (Mich.Ct.App.1991) (quoting *Allen v. Michigan Bell Tel. Co.*, 18 Mich.App. 632, 171 N.W.2d 689 (Mich.1969)); *see also Hubscher & Son, Inc. v. Storey*, --- N.W.2d ----, No. 200449, 228 Mich.App. 478, 578 N.W.2d 701, 1998 WL 101807 (Mich.Ct.App. March 6, 1998). A contract that "is offered on a take it or leave it basis to a consumer who has no realistic bargaining strength *and* who cannot obtain the desired services or goods without consenting to the contract terms" satisfies the first prong of the definition of an adhesion contract. *Cushman v. Frankel*, 111 Mich.App. 604, 314 N.W.2d 705, 707 (Mich.Ct.App.1982) (emphasis added); *see also USAA Group v. Universal Alarms, Inc.*, 158 Mich.App. 633, 405 N.W.2d 146, 147 (Mich.Ct.App.1987) (quoting *Cushman*). However, "[e]ven if the contract is adhesive under the first prong, the challenged term is still enforceable if substantively reasonable and not oppressive or unconscionable." *Rehmann, Robson & Co.*, 466 N.W.2d at 329. Accordingly, LoDal's challenge to the Policy's arbitration clause must fail unless LoDal demonstrates that the clause is both procedurally and substantively flawed.

Applying this standard to the allegations in LoDal's complaint, we hold that LoDal failed to present allegations in its complaint sufficient to support its conclusory statement that the Policy is a contract of adhesion. In support of its claim that the Policy is a contract of adhesion, LoDal alleges that the arbitration clause "was not a hard-bargained contract provision drafted after mutual consideration of the positions of two negotiators with equal or substantially equal skills and resources," and was presented to LoDal "on a take-it-or-leave-it basis." J.A. at 21 (Compl.¶¶ 18, 19). Although we harbor some doubt as to whether these conclusory statements unaccompanied by more particularized facts support a finding of unequal bargaining power, we will assume that the allegations contained in LoDal's complaint support its claim that Home Insurance possessed superior bargaining power.

LoDal, however, has not made any allegations in its complaint demonstrating that it could not obtain commercial liability insurance from another source without consenting to an arbitration provision similar to that contained in the policy offered by Home Insurance. [FN4] Accordingly, because the complaint does not include allegations that LoDal had no other alternatives but to agree to the Policy's terms, LoDal cannot show that the contract is adhesive under the first prong of the definition of an adhesion contract. Having concluded that LoDal failed to include in its complaint allegations sufficient to support its claim that the Policy was procedurally adhesive, we need not consider whether the arbitration clause is substantively reasonable.

> FN4. In its brief, LoDal states that it purchased and paid for Home Insurance's commercial liability policy without "any prior notice" of the arbitration provision, Pl.-Appellant's Br. at 35, as it did not receive the policy until "a considerable time after the effective date of the Policy and after the payment ha[d] been made." Pl.-Appellant's Reply Br. at 4. Because under the terms of the Policy cancellation would result in a "short rate cancellation penalty," LoDal contends that it was locked into the Policy and thus could not obtain alternate coverage with another insurer. See Pl.-Appellant's Br. at 36. These factual allegations, none of which are clearly set forth in the complaint, do not support LoDal's claim that the Policy is an adhesion contract. In determining whether LoDal was in a position to obtain liability insurance protection from alternative sources, we look to the situation at the initial purchasing stage. LoDal has not alleged that the objectionable aspects of the arbitration clause contained in the Policy are standard terms contained in the commercial liability policies offered by other insurers; nor has LoDal claimed that Home Insurance refused to provide it with a copy of the policy prior to its purchasing liability coverage from Home Insurance. We thus are unaware of any limitations preventing LoDal from closely examining the terms of the Policy prior to purchase, objecting to the arbitration provision, and obtaining coverage from an alternative source under more favorable terms had Home Insurance refused to amend its policy. Accordingly, we do not believe LoDal lacked realistic alternatives and was at the mercy of the defendant. *Cf. USSA Group*, 405 N.W.2d at 147 (no adhesion contract where record did not reveal any limitations preventing the plaintiff from obtaining product from another source); *Brown v.*

156 F.3d 1230 (Table) Page 5
(Cite as: 156 F.3d 1230, 1998 WL 393766, **4 (6th Cir.(Mich.)))

*Siang*, 107 Mich.App. 91, 309 N.W.2d 575, 581-82 (Mich.Ct.App.1981) (no adhesion contract where plaintiff was not required to agree to the arbitration provision included in document entitled "Conditions to Admission" as a condition precedent to admission to defendant-hospital). This court will not shield an insured from the consequences of the terms and conditions of an insurance contract where at the time of entering into the contract the insured was in position to protect itself from those consequences.

**5 Nor does the Federal Arbitration Act, 9 U.S.C. § 1 et seq., or Michigan's arbitration statute, Mich. Comp. Laws § 600.5001 (1997), render the agreement unenforceable. The Federal Arbitration Act authorizes federal courts to vacate an arbitration award "[w]here there was evident partiality ... in the arbitrators." 9 U.S.C. § 10(a)(2). Similarly, the Michigan courts have interpreted Michigan's arbitration statute as authorizing the courts to vacate an arbitration award where "there was evident partiality by an arbitrator appointed as a neutral." *Renny v. Port Huron Hosp.*, 427 Mich. 415, 398 N.W.2d 327, 337 (Mich.1987) (quoting Mich. Ct. R. 3.602(J)). These statutory protections, however, will not protect a party that consents in advance to an arbitration process, even one with a clearly built-in bias favoring the other party to the arbitration.

In *Garfield & Co. v. Wiest*, 432 F.2d 849 (2d Cir.1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971), the plaintiff, a small firm that was a member of the New York Stock Exchange ("Exchange"), sought vacation of an arbitration award on the grounds that the arbitrators, all members of the Exchange, were biased against small and unknown firms and would favor the defendant, a large firm with whom the arbitrators presumably did substantial business. *See id.* at 851-52. Member firms had agreed to the Exchange's arbitration procedures when they joined the Exchange. In holding that the plaintiff waived any objections to the arbitrators based upon bias against small firms, the court noted that "[t]he selection of the arbitration panels was known to [the plaintiff], and it most certainly knew that any arbitrators, by their very connection with the Exchange, would, in the ordinary course of business, have dealings with specialists, and that Exchange arbitrators would usually have more substantial contacts with large member firms than with small member firms." *Id.* at 853. Similarly, the Ninth Circuit refused to vacate an arbitration award in favor of a union and against an employer on the basis that the arbitrators were selected from a pool comprised of the employer's competitors and union representatives where the employer effectively consented to the procedures in its collective bargaining agreement with the union. *See Sheet Metal Workers Int'l Ass'n v. Jason Mfg., Inc.*, 900 F.2d 1392, 1398 (9th Cir.1990). These cases stand for the proposition that the statutory protections against arbitration awards not free of "evident partiality" may be waived where the bias is readily apparent and the adversely affected party nevertheless consents to the arbitration process. We see no reason why the Michigan courts would not adhere to this rule, especially when Michigan law directs that "[i]f the arbitration agreement provides a method of appointment of arbitrators, this method *shall* be followed." *See* Mich. Comp. Laws § 600.5015 (1997) (emphasis added). *Cf. Whitaker v. Citizens Ins. Co. of Am.*, 190 Mich.App. 436, 476 N.W.2d 161, 162-64 (Mich.Ct.App.1991) (relying in part on Mich. Comp. Laws § 600.5015, court refused to vacate arbitration award where parties' contract allowed for the appointment of party-chosen, non-neutral arbitrators, in addition to neutral umpire).

**6 The language of the arbitration clause contained in the liability insurance policy agreement entered into by LoDal and Home Insurance unambiguously and clearly sets forth the procedures by which the parties will select the arbitration panel. Consequently, a reading of the policy would provide LoDal clear notice of any potential bias in favor of Home Insurance inherent in an arbitration process that limits the pool of arbitrators to present or former insurance executives. In failing to object to the arbitration clause at the time of purchasing the Policy, LoDal effectively consented to the terms of the arbitration clause, thereby waiving any objection to the arbitration clause LoDal potentially could have raised under the federal and Michigan arbitration statutes. [FN5]

> FN5. Our holding only addresses LoDal's facial challenge to the Policy's arbitration clause. We do not address the validity of any subsequent arbitration decision awarded under the Policy. Either party remains free to challenge a specific arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., or Michigan's arbitration statute, Mich. Comp. Laws § 600.5015 (1997).

LoDal also argues that arbitration before a panel of arbitrators that are all either past of present insurance company executives violates its rights to procedural due process because of the appearance of bias in favor of the insurance industry, regardless of whether the individual panel members actually perform their duties

156 F.3d 1230 (Table) **Page 6**
(Cite as: 156 F.3d 1230, 1998 WL 393766, **6 (6th Cir.(Mich.)))

in a partial manner. LoDal relies on the Supreme Court's decision in *Concrete Pipe and Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). In *Concrete Pipe,* the Court held that due process requires a neutral and detached arbitrator where ERISA required employers to submit to arbitration if the employer and the Pension Benefit Guarantee Corporation could not resolve a dispute concerning the employer's withdrawal liability under 29 U.S.C. §§ 1381, 1391. *See Concrete Pipe and Prods. of Cal.,* 508 U.S. at 617. In the present case, however, the state has not compelled LoDal to arbitrate through a legislative mandate; rather, Home Insurance seeks to compel LoDal to arbitrate in accord with the terms of their *private* contract. In the absence of any state action, LoDal's procedural due process right to an impartial arbitrator is not triggered, and LoDal cannot avail itself of the Due Process Clause's standard of neutrality. *See City of Dearborn v. Freeman-Darling, Inc.,* 119 Mich.App. 439, 326 N.W.2d 831 (Mich.Ct.App.1982) (refusing to vacate arbitration award as violation of plaintiff's due process rights because no state action involved and contract action between private parties does not invoke the Due Process Clause).

Finally, we reject LoDal's contention that the arbitration clause is unenforceable because Home Insurance has waived enforceability of the provision by proceeding with this litigation. The district court found that Home Insurance did not waive its right to demand arbitration but repeatedly asserted this right. J.A. at 204-05 (Dist. Ct. Op. and Order Approving Magis. J.'s R & R). In its first responsive pleading, Home Insurance maintained that the arbitration clause was enforceable. J.A. at 52 (Answer ¶¶ 18-23). Thereafter, Home Insurance again asserted in its Rule 12(b)(6) motion that the arbitration clause was enforceable, and asked the court to dismiss the case in order to allow the matter before the district court to proceed in arbitration. J.A. at 90 (Mot. for Summ. J.). We hold that through these actions Home Insurance preserved its right to demand arbitration of the dispute currently before the court.

CONCLUSION

**7 For the reasons stated above, we AFFIRM the district court's dismissal pursuant to Rule 12(b)(6) on the grounds that the Policy's arbitration clause is enforceable and that Home Insurance preserved its right to demand resolution of its dispute with LoDal through arbitration.

156 F.3d 1230 (Table), 1998 WL 393766 (6th Cir.(Mich.)) Unpublished Disposition

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.